# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CURTIS L. GIBSON, | : | CIVIL ACTION NO. 3:17-cv-0547 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| CAPT. CROUCH, JR., *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Curtis L. Gibson ("Gibson" or "Plaintiff"), a state inmate in the custody of the Pennsylvania Department of Corrections ("DOC") incarcerated, at all times relevant, at the State Correctional Institution at Smithfield ("SCI-Smithfield") Huntingdon, Pennsylvania, filed the civil rights complaint on March 16, 2017 pursuant to 42 U.S.C. § 1983. (Doc. 1).

Presently pending is Defendant Crouch's motion (Doc. 57) for summary judgment. For the reasons set forth below, the motion will be granted.

**I.    Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id.; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Wooler v. Citizens Bank, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving

at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex,.477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" Picozzi v. Haulderman, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## II.     Statement of Material Facts

On December 31, 2016, while incarcerated at the State Correctional Institution at Smithfield, Gibson was placed in the Restricted Housing Unit ("RHU") in cell KA-25. (Doc. 62, ¶ 1). He alleges that shortly after placement in the cell, he "attempted to get a drink of water; neither hot or cold water faucets worked. Both were inoperatable [sic]." (Doc. 11, ¶ 10). He avers that he used various methods to notify prison officials that water in the toilet was the only water he had in his cell. (Id.) A maintenance crew allegedly came to his cell on January 6, 2017, to "work on the water." (Id. at 11). "This was due to previous complaints/grievances, that had been submitted on this cell (KA-25) by the previous occupant/prisoner…" (Id.)

3

The DOC's Administrative Directive DC-ADM 804 ("DC-ADM 804"), entitled "Inmate Grievance System," provides a multi-step administrative grievance appeal process that was established to ensure that inmates have an avenue through which to resolve issues relating to their incarceration. (Doc. 62, ¶ 2; Doc. 63, pp. 7- 39). The DOC's Inmate Handbook provides inmates with notice of the Grievance Policy and the applicable procedures and requirements. (Doc. 62, ¶ 7).

Pursuant to the DC-ADM 804, prior to filing an official grievance, an inmate is encouraged to attempt informal resolution with the Unit Manager or Officer-in-Charge. (Doc. 63, p. 14). If informal resolution is unsuccessful, the inmate may then file an initial grievance with the Facility Grievance Coordinator at the facility where the grievance event took place. (Doc. 62, ¶ 4). DC-ADM 804 sets forth the following requirements concerning the contents of the grievance:

> 11. The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim.
>
>    a. The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.
>
>    b. The inmate shall identify individuals directly involved in the event(s).
>
>    c. The inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.
>
>    d. If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance.

4

(Id. at 8; Doc. 63, p. 15; DC-ADM 804, § 1 (A)(11)(a)-(d)). If the inmate is dissatisfied with the initial review of his or her grievance, he or she may file an appeal of the decision with the Facility Manager within fifteen working days from the date of the initial review response. (Doc. 62, ¶ 5; Doc. 63, p. 23). Within fifteen working days, the Facility Manager shall notify the inmate of his or her decision. (Doc. 63, p. 24). Upon receiving a decision from the Facility Manager, an inmate may, within fifteen working days, submit an appeal to the final level of review, the Chief Grievance Officer, Secretary's Office of Inmate Grievances and Appeals (SOIGA). (Id. at 26-28).

On January 6, 2017, while housed at SCI-Smithfield, Gibson filed Grievance 659690, stating that between December 31, 2016, and January 6, 2017, he was placed in a cell without running water. (Doc. 62, ¶ 9; Doc. 78, p. 1, ¶ 1) . Grievance 659690 does not identify or name Defendant Crouch as being involved in the events of which Gibson complains. (Id. at 10; Doc. 63, p. 50). The grievance was denied at all levels of review. (Id. at 11; Doc. 78, p. 1, ¶¶ 1, 6, 7).

### III. Discussion

Defendant Crouch seeks an entry of summary judgment based on Gibson's failure to properly exhaust his administrative remedies, as required by 42 U.S. C. § 1997e(a), prior to initiating this action.

The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge

5

prison conditions." Ross v. Blake, —U.S. —; 136 S. Ct. 1850, 1856 (2016); see Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'" Id. "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. See Miller v. French, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." Id. at 1856-57.

Further, the PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. Woodford v. Ngo, 548 U.S. 81, 92 (2006); Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); Rivera v. Pa. Dep't of Corr., 388 F.App'x 107, 108 (3d Cir. 2010) (stating "[a]n inmate must exhaust his administrative remedies prior to filing a civil action in federal court."). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. See Spruill, 372 F.3d 218. "As for the failure to [ ] identify [the] named defendants on the grievance form, ... to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on

6

the grievance form. And, ... in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." Williams v. Pennsylvania Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005) (citing Spruill, 372 F.3d at 234).

Finally, whether an inmate has properly exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden County, 728 F.3d. 265, 268 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).[1]

Defendant Crouch specifically seeks an entry of judgment based on Gibson's failure to identity him, at any point throughout the grievance process, as an individual directly involved in the events of which he complains. Gibson does not dispute this. Instead, he maintains that he exhausted his administrative remedies and argues that he was the "victim of prison officials violating the D.O.C. Rules and Regulations, D.O.C. Code of Ethics, by their own written responses/admittances." (Docs. 76, 78, p. 3, 87).

Although Gibson presented and pursued the grievance concerning his cell conditions to final review, he failed to identify Defendant Crouch as being directly involved. As noted *supra*, the standard used in determining whether a prisoner has exhausted the administrative process is whether he properly exhausted by complying with applicable grievance procedures and rules. The relevant DOC policy and pertinent

---

[1] In accordance with Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018), the Court placed the parties on notice that it would consider exhaustion in its role as fact finder and afforded the parties the opportunity to be heard under Small, 728 F.3d at 268. (Doc. 73).

language states that "[t]he inmate shall identify individuals directly involved in the event(s)." (DC-ADM 804, § 1(A)(11)(b)). A similar provision in an earlier version of DC-ADM 804, required an inmate to name the individuals in the grievance against whom the inmate eventually brings suit. Spruill, 372 F.3d at 234. The version in effect at the relevant time is even more cogent as it now contains the mandatory language, "shall identify." (Doc. 31-1, Ex. 1, Attach. A, p. 11, ¶ 12(b), DC-ADM 804, § 1(A)(12)(b)). The Spruill Court explained that the purpose of the regulation is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. Spruill, 372 F.3d at 234. "[I]t is clear, regardless of the purpose of the requirement, that Spruill requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default." Hemingway v. Ellers, 2008 WL 3540526, at *11 (M.D. Pa. 2008) (citing Williams, 146 F.App'x. at 557; see also, Singleton v. Beadle, No. 3:17-CV-220, 2018 WL 1129300, at *3 (M.D. Pa. Feb. 26, 2018); McNesby v. Heenan, No. 3:CV-16-0602, 2017 WL 4418421, at *4 (M.D. Pa. Oct. 5, 2017).

Moreover, under Spruill, it is the plaintiff's burden to explain why he did not name a defendant in the grievance. See Spruill, 372 F.3d at 234 (noting that "Spruill did not [name Brown in his grievance], and has offered no explanation for his failure to do so"). Gibson offers no explanation for his failure to name Defendant Crouch in his grievance. Consequently, Defendant Crouch is entitled to an entry of summary judgment in his favor.

## IV. Conclusion

Based on the foregoing, Defendant Crouch's motion (Doc. 57) for summary judgment will be granted.

An appropriate Order will issue.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**