# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CURTIS L. GIBSON, | No. 3:17-CV-00547 |
| Plaintiff. | (Judge Brann)[1] |
| v. | |
| CAPT. CROUCH, JR., *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### APRIL 29, 2020

Plaintiff Curtis Gibson ("Gibson"), at the relevant time, a state inmate housed as the State Correctional Institution at Smithfield ("SCI-Smithfield"), Huntingdon, Pennsylvania, commenced this action pursuant to 42 U.S.C. § 1983, on March 16, 2017, naming as Defendants Capt. Crouch, Jr., and "various prison officials."[2] Gibson amended the complaint on April 24, 2017, and, on July 9, 2018, identified the various prison officials as Defendants Wiser, Brennan and Frock.[3] Gibson alleges that on December 31, 2016, shortly after prison officials placed him in cell KA-25 in the Restricted Housing Unit ("RHU"), he "attempted to get a drink of

---

[1] This matter has been reassigned to the undersigned following the death of the Honorable James M. Munley.

[2] Doc. 1.

[3] Docs. 11, 91.

water; neither hot or cold water faucets worked. Both were inoperatable [sic]."[4] He avers that he used various methods to notify prison officials that water in the toilet was the only water he had in his cell.[5] A maintenance crew allegedly came to his cell on January 6, 2017, to "work on the water."[6] "This was due to previous complaints/grievances, that had been submitted on this cell (KA-25) by the previous occupant/prisoner…"[7]

Before me is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed by Defendants Wiser, Brennan and Frock.[8] For the reasons set forth below, that motion will be granted. It also appears that it is Gibson's intent to move for summary judgment.[9] Although the document Gibson identifies as his motion for summary judgment fails to comply with either the Federal Rules of Civil Procedure or the Local Rules of Court, I will consider the document as a cross motion for summary judgment and deny the motion. In addition, I will take this opportunity to vacate the September 6, 2018 Memorandum and Order granting summary judgment in favor of Defendant Crouch based solely on Gibson's failure

---

[4] Doc. 11, ¶ 10.
[5] *Id.*
[6] *Id.* at 11.
[7] *Id.*
[8] Doc. 150.
[9] Doc. 157.

to exhaust his administrative remedies and consider the merits of the claim against Crouch.[10] The result of the prior Memorandum and Order will not be altered.

## I.   STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[11] "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[12] A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.[13] An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[14]

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.[15] Although the moving party must

---

[10] Docs. 57, 105, 106.

[11] FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990).

[13] *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).

[14] *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986*); Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996).

establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."[16] It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's claims."[17]

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.[18] The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[19] "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'"[20] "Inferences should be drawn in the light most favorable to the non-moving party,

---

[16] *Celotex*, 477 U.S. 317, 323 (1986).

[17] *Id.* at 325.

[18] FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008).

[19] *Celotex*, 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

[20] *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)).

and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."[21]

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.[22] The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.[23] The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue.[24]

## II.   STATEMENT OF MATERIAL FACTS

### A.   Exhaustion of Administrative Remedies

The Pennsylvania Department of Corrections' ("DOC") has an established Inmate Grievance System policy, DC-ADM 804 ("Inmate Grievance System"), which affords inmates an avenue to resolve issues relating to their incarceration.[25]

---

[21]   *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

[22]   *Celotex*, 477 U.S. at 322.

[23]   *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

[24]   *Anderson*, 477 U.S. at 249–50.

[25]   Doc. 62, ¶¶ 2,3; Doc. 152, ¶¶ 2, 3.

Inmates are provided notice of the Inmate Grievance System in the Inmate Handbook.[26]

Pursuant to the DC-ADM 804, prior to filing an official grievance, an inmate is encouraged to attempt informal resolution with the Unit Manager or Officer-in-Charge.[27] In pursuing a formal grievance, inmates must first file a grievance with the Facility Grievance Coordinator at the facility where the events upon which the complaint is based occurred.[28] The grievance must be legible, comprehendible, and include a statement of facts detailing the date, time, location, and identifying the individuals involved in the event.[29] If the inmate is dissatisfied with the initial review of his or her grievance, he or she may file an appeal of the decision with the Facility Manager or Superintendent.[30] Upon receiving a decision from the Facility Manager or Superintendent, the inmate may seek final review of that decision from the Secretary's Office of Inmate Grievances and Appeals.[31]

On December 31, 2016, Gibson was placed in the RHU at SCI-Smithfield in cell KA-25.[32] He timely filed Grievance 659690 complaining that between

---

[26] Doc. 62, ¶ 7; Doc. 152, ¶ 7.

[27] Doc. 63, p. 14.

[28] Doc. 62, ¶ 4; Doc. 152, ¶ 4.

[29] *Id.* at 8; *Id.* at 8.

[30] *Id.* at 5; *Id.* at 5.

[31] *Id.* at 6; *Id.* at 6

[32] Doc. 62, ¶ 1; Doc. 152, ¶ 1; Doc. 158, ¶ 2.

December 31, 2016, and January 6, 2016, he was placed in a cell without running water.[33] According to the Initial Review Response, "[t]he work orders that were installed into the electronic work order system state that the water did not shut off and that the water was continuously running. Which means that you did have water in the cell."[34] The Facility Manager responded to the grievance as follows: "Two work orders were submitted for cell 25 on 12/17/16 and 12/29/16 respectively. The work orders state the hot water was continuously running. At no time were you without running water."[35] The grievance was considered, and denied, at all levels of review.[36]

Gibson failed to identify any of the Defendants in the grievance.[37] He indicates that when prison officials placed him in the cell, his vision was obscured by a spit guard.[38] At the time he filed this action, he identified Crouch and "various prison officials" as Defendants.[39] Through discovery, he was able to identify Defendants Wiser, Brennan and Frock as also being involved in placing him in cell KA-25.[40]

---

[33]   *Id.* at 9; *Id.* at 9.

[34]   *Id.* at 15; *Id.* at 15.

[35]   Doc. 63, p. 45; Doc. 153, p. 45.

[36]   *Doc. 62, ¶ 11; Doc. 152, ¶ 11.*

[37]   *Id*. at 10;  *Id*. at 10.

[38]   Doc. 158, p.2, ¶ 2.

[39]   Doc. 1.

[40]   *Id.*

8

### B. Cell KA-25

On December 17, 2016, prior to the date Gibson occupied cell KA-25, a work order was submitted because the cold water in the cell did not work, and the hot water would not turn on.[41] The sink was repaired on December 19, 2016.[42] A work order submitted on December 29, 2016, described the maintenance problem as "sink continuously running."[43] The work was completed on January 6, 2017.[44]

### III. ANALYSIS

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.[45] The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....[46]

---

[41] Doc. 62, ¶ 12; Doc. 152, ¶ 12.

[42] *Id*. at 13; *Id*. at 13.

[43] *Id.* at 14, 15; *Id.* at 14, 15.  Doc. 153, p. 69.

[44] Doc. 62 ¶14; Doc. 152 ¶ 14.

[45] *See* 42 U.S.C. § 1983

[46] *Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[47] Thus, §1983 limits liability to persons who violate constitutional rights.

### A.   Exhaustion of Administrative Remedies

Defendants seek an entry of summary judgment based on Gibson's failure to exhaust available administrative remedies.[48]  The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions."[49]  The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'"[50]  "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. *See Miller v. French*, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")."[51]

---

[47]  *West v. Atkins*, 487 U.S. 42, 48 (1988).

[48]  Doc 61, p. 5; Doc. 151, p. 7.

[49]  *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *see Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.").

[50]  *Id.*

[51]  *Id.* at 1856-57.

While recognizing that the PLRA requires that prisoners comply with the procedural demands of a system created by their jailors, the United States Court of Appeals for the Third Circuit recently noted that the jailors must comply with the demands of the system they created.[52] That court went on to hold that "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement."[53]

Defendants specifically seek summary judgment based on Gibson's failure to identify the Defendants in his grievance. In opposition to the motion, Gibson states that his vision was obscured by a spit guard at the time prison officials placed him in the cell. Defendants do not dispute this statement. Further, although he does not specify the individuals responsible, he clearly identifies the lack of drinking water and includes detailed and relevant facts as to the dates, location and time of the complained of conduct.[54] "[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued."[55] Gibson clearly accomplished the goal of alerting prison officials to

---

[52] *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019).

[53] *Id.*

[54] Doc. 63, p. 52 ; Doc. 153, p. 50.

[55] *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007).

the problem and, as such, exhausted his administrative remedies in accordance with PLRA requirements.

**B.     Merits**

I now turn to the merits Gibson's claim that the lack of drinking water in cell KA-25 from December 31, 2016, to January 6, 2017, violated his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment "prohibits any punishment which violates civilized standards and concepts of humanity and decency."[56]  To prevail on a claim that an inmate's conditions of confinement violated the Eighth Amendment, the inmate must meet two requirements: (1) the deprivation alleged must be, objectively, "sufficiently serious," and (2) the "prison official must have a sufficiently culpable state of mind."[57] The first element is satisfied when an inmate is deprived of "the minimal civilized measure of life's necessities."[58]  The second element is satisfied when an inmate shows that prison officials acted with deliberate indifference to the inmate's health or safety or conditions of confinement that violated the inmate's constitutional rights.[59]

---

[56] *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992), superseded by statute on other grounds as stated in *Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000) (citations omitted).

[57] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted).

[58] *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

[59] *Id.* at 302–03.

In support of his motion, Gibson focuses on the subjective prong of the test.[60] Specifically, he argues that Defendants had advanced knowledge of the conditions of the cell and, in placing him in that cell, deliberately deprived him of a basic human need.[61] Conversely, Defendants hone in on the objective prong, arguing that the conditions to which Gibson was exposed were not sufficiently serious to constitute a deprivation of a basic human need.[62]

The deprivation of drinking water for several days may rise to the level of a constitutional violation when there is no legitimate penological interest for such deprivation.[63] When a prisoner is placed in a cell with no water and is not provided any access to fluids, the deprivation is "sufficiently serious" and may in some circumstances demonstrate "deliberate indifference" to sustain a claim.[64] However, if the inmate "were to have had access to adequate hydration during the period in question, even in conjunction with meals he otherwise did not desire to eat, his claim would necessarily fail, as he would not be able to show that the complained-of deprivation was 'sufficiently serious.' "[65]

---

[60] Docs. 155, 157.

[61] Doc. 157, p. 6.

[62] Doc. 151.

[63] *See Young*, 960 F.2d at 364-65 (finding summary judgment inappropriate where factual allegations indicated that the inmate was placed in a dry cell for 96 hours, not provided with drinking water, and was taunted by guards about cell conditions).

[64] *Collier v. Martinez*, 474 F. App'x 870, 874 (3d Cir. 2012).

[65] *Id.* at n. 5; *see also Chavarriaga v. New Jersey Department of Corrections*, 806 F.3d 210, 228 (3d Cir. 2015).

Defendants argue that, contrary to Gibson's allegations, the work order demonstrates that there was running water in the cell at all times.[66] They note that, according to the work order, although the cold water needed to be repaired, the hot water was continuously running.[67] There is no evidence that Gibson was without running water in his cell at any time during the seven days at issue.

Even if Gibson were without running water for seven days, as he maintains, he would not be entitled to relief on this record.[68] The mere fact that the water in was turned off for a period of days, without more, even if proven by Gibson, is not sufficient to rise to the level of a constitutional violation.[69] There is no evidence that would suggest that Gibson was deprived of access to all fluids from December 31, 2016, through January 6, 2017. As noted *supra*, Gibson's access to adequate hydration during the period in question, with his meals or otherwise, evidences that any lack of running water in his cell was not sufficiently serious to rise to the level of an Eighth Amendment deprivation of a basic human need.

---

[66] Doc. 151, p. 6.

[67] *Id.*

[68] Docs. 157.

[69] *Lane v. Culp*, No. 05-576, 2007 WL 954101, at *5 (W.D. Pa. Mar. 28, 2007) quoting *Stewart v. Wright*, 1996WL6657978 at * 1-2 (7th Cir. 1996) ("Dry cell conditions such as not being able to flush the toilet or brush teeth are mere inconveniences ... [I]t is well settled that conditions which are temporary and do not result in physical harm are not actionable under the Eighth Amendment.").

Because the record is devoid of evidence that establishes that Gibson suffered a sufficiently serious harm due to the sink malfunction in cell KA-25, Defendants are entitled to an entry of summary judgment.

## IV. CONCLUSION

Based on the foregoing, Defendants' motions for summary judgment will be granted; Plaintiff's cross motion will be denied.[70]

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[70] Docs. 57, 150, 157.